**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**NORTHERN DIVISION**

| | |
|---|---|
| Josh Dinwiddie, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>- against -<br>Lenovo (United States) Inc.,<br>Defendant | 2:22-cv-00218<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Lenovo (United States) Inc. ("Defendant") manufactures, markets, and sells the Legion T5 28IMB05 desktop computer under the Lenovo brand ("Product").

2. Defendant markets its computers with the representations that they are built with an "Intel Core i5 2.90 GHz processor [that] provides [a] solid performance," an "8 GB DDR4

SDRAM memory to handle complex applications simultaneously," "1 TB HDD" of storage, a "256 GB SSD [to] keep[ ] running programs active while [the] computer resumes from suspension in seconds," and "a NVIDIA GeForce GTX 1650 Super discrete graphic card for gaming and graphic designing, [to deliver an] optimal visual experience."

- Intel Core i5 2.90 GHz processor provides you the solid performance to watch videos, play games, and on the same node its adaptability makes you more productive
- 8 GB DDR4 SDRAM memory to handle complex applications simultaneously
- 1 TB HDD provides you enough space to store all your documents and multimedia content
- 256 GB SSD keeps your running programs active while your computer resumes from suspension in seconds
- NVIDIA GeForce GTX 1650 Super discrete graphic card for gaming and graphic designing that delivers the optimal visual experience
- With Windows 10 Home edition, enjoy your favorite content all at once on a larger view edge browser. Share your thoughts with the world by writing directly on web pages.

3. The description tells consumers it will function reliably, not freeze or crash, and run smoothly during operation subject to normal use.

4. Despite users' expectations the Product would function reliably for games, graphic design, and other everyday use without freezing or crashing, hardware and software defects have prevented this.

5. These issues are manifested in the frequent and severe freezing and/or crashing, significantly interrupting the use of their devices.

LEN2021OVO
What's DOS?

Posts: 1
Registered: 2021-04-27 15:23:25
Location: United States of America
Views: 15

2021-04-27 15:53:11

Legion T5 28IMB05 constantly gets severe freezes

New desktop constantly gets severe freezes in multiple scenarios. The kind of freezes where the screen completely freezes, the clock doesn't update, and the caps lock light does not respond. The only way out of the freeze is to force a shutdown. I used to think the problem was the storage hard drive because it froze at least 4 times downloading a game from Steam onto the hard drive. It also froze once just from trying to access the hard drive files. But it has also frozen just from using the browser (installed on the SSD). Reinstalling Windows did not fix the problem.

Does anyone else have this problem? Would replacing the PC with a different one fix the problem?

**Legion T5 28IMB05 constantly gets severe freezes**

New desktop constantly gets severe freezes in multiple scenarios. The kind of freezes where the screen completely freezes, the clock doesn't update, and the caps lock light does not respond.

The only way out of the freeze is to force a shutdown. I used to think the problem was the storage hard drive because it froze at least 4 times downloading a game from Steam onto the hard drive. It also froze once just from trying to access the hard drive files. But it has also frozen just from using the browser (installed on the SSD). Reinstalling Windows did not fix the problem.

Taterz
Paper Tape

Posts: 6
Registered: 2020-11-19 21:38:39
Location: United States of America
Views: 35
Message 11 of 584

2021-08-26 22:33:43

Legion T5 tower 28IMB05 freezing

I've seen other forums where this has been mentioned, but not resolved. My Legion T5 tower keeps freezing multiple times throughout the day. Most often when watching online videos or visiting shopping apps/websites. I'm unable to use keyboard or mouse. I have to manually shut down by pressing the power button and then reboot. It will work again for a couple of hours and then freeze up again.

What's causing this?! Has anyone found any real fixes? All drivers are up-to-date.

**Legion T5 tower 28IMB05 freezing**

I've seen other forums where this has been mentioned, but not resolved. My Legion T5 tower keeps freezing multiple times throughout the day. Most often when watching online videos or visiting shopping apps/websites. I'm unable to use keyboard or mouse. I have to manually shut down by pressing the power button and then reboot. It will work again for a couple of hours and then freeze up again.

6. An identified cause are the NVIDIA audio and graphics drivers, believed incompatible with the Product's other drivers, software and components.

7. While temporary options have been proposed including re-installing the relevant drivers, a permanent solution has not or took significant amounts of time to materialize.

8. This is especially frustrating for users because Defendant has not categorized this as a defect, which prevents warranty coverage.



Mikew2007
Paper Tape

Posts: 5
Registered: 2020-09-12 05:35:20
Location: Canada
Views: 30

Message 138 of 236

2021-12-21 10:40:10

Re:Legion T5 28IMB05 constantly gets severe freezes

Hi Everyone,

I'm only just discovering this forum, and I've been experiencing freezing issues with my Legion T5 now since August 2021.

I do have Lenovo Ultimate Support, and I've spoken to them several times now.

I just wanted to post here to let you guys know what they've told me, and maybe this could help some people:

The last time I spoke to Lenovo support was yesterday (December 20, 2021) and they've told 2 things are causing the problem:

1) The Audio Driver, &

2) The Graphics Driver

Both drivers need to be re-installed through Lenovo provided software. DO NOT update the drivers after installing them from Lenovo's website, & turn off automatic updates. You may also want to revert the BIOS to default settings if that has been altered at all.

Lenovo is apparently working with NVDIA to roll out a new update that will correct the freezing issues.

9. Hundreds of users have taken to internet message boards with similar stories and their efforts to find a solution, to no avail.

10. Consumers expect a computer represented – directly or indirectly – as capable of functioning reliably, not freezing or crashing, and running smoothly during operation, to act as promised, especially when it is marketed to have an Intel Core i5 2.90 GHz processor, 8 GB DDR4 SDRAM, 1 TB HDD storage, 256 GB SSD, and a NVIDIA GeForce GTX 1650 graphic card.

11. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

12. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

13. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1,999.00, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

14.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

15.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

16.    Plaintiff is a citizen of Michigan.

17.    Defendant is a Delaware corporation with a principal place of business in North Carolina.

18.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

19.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years with the issues described here in hundreds of locations across the States covered by Plaintiff's proposed classes.

20.    The Product is available from office supply stores, consumer electronics stores, big box stores, and online.

21.    Venue is in this District with assignment to the Northern Division because Plaintiff resides in Marquette County and a substantial part of the events or omissions giving rise to these claims occurred there, including Plaintiff's use of the Product and awareness and/or experiences of and with the issues described here.

Parties

22.    Plaintiff Josh Dinwiddie is a citizen of Marquette, Marquette County, Michigan.

23.    Defendant Lenovo (United States) Inc. is a Delaware corporation with a principal place of business in Morrisville, Wake County, North Carolina.

24.   Products under the Lenovo brand have an industry-wide reputation for innovation, quality, and value.

25.   Plaintiff purchased the Product within the statutes of limitations for each cause of action alleged, from Best Buy, 5425 Harvey St, Muskegon, MI 49444, between November 2021 and April 2022.

26.   Plaintiff bought the Product because he believed and expected it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use, because that is what the representations and omissions said and implied.

27.   Plaintiff relied on the words, descriptions, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

28.   Plaintiff bought the Product at or exceeding the above-referenced price.

29.   Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

30.   The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

31.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their abilities, attributes, features, and/or components.

32.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

33.   Plaintiff is unable to rely on the representations not only of this Product, but other similar computers, because he is unsure whether those representations are truthful.

Class Allegations

34. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Michigan Class:** All persons in the State of Michigan who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, West Virginia, Kansas, Montana, Wyoming, Texas, Iowa, Nebraska, Mississippi, South Carolina and Oklahoma who purchased the Product during the statutes of limitations for each cause of action alleged.

35. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

36. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

37. Plaintiff is an adequate representative because his interests do not conflict with other members.

38. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

39. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

40. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

41. Plaintiff seeks class-wide injunctive relief because the practices continue.

Michigan Consumer Protection Act,
§ 445.901, *et seq.*

42. Plaintiff incorporates by reference all preceding paragraphs.

43. Plaintiff believed the Product would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

44. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

45. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

46. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

47. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

48. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

49. The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

50.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

51.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

52.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

53.     Defendant's representations affirmed and promised that the Product would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

54.     Defendant described the Product so Plaintiff believed it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use, which became part of the basis of the bargain that it would conform to its affirmations and promises.

55.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

56.     This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its high-quality electronics.

57.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

58.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

59.     Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

60. The Product did not conform to its promises or affirmations of fact due to Defendant's actions.

61. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

62. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

63. Defendant had a duty to truthfully represent the Product, which it breached.

64. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its high-quality electronics.

65. Defendant's representations and omissions regarding the Product went beyond the specific representations made in marketing, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

66. These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

67. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

68. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

69. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

70. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use.

71. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

Unjust Enrichment

72. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary, statutory and/or punitive damages and interest;

5.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   November 22, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com