UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSH DINWIDDIE, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | No. 2:22-cv-218 |
| v. ) | |
| ) | Honorable Paul L. Maloney |
| LENOVO (UNITED STATES) INC., ) | |
| Defendant. ) | |
| ) | |

## ORDER RESOLVING MOTION TO DISMISS

Plaintiff, Mr. Dinwiddie, filed this action alleging deficiencies in Defendant's product, a Legion T5 28IMB05 desktop computer. Plaintiff's amended complaint includes claims under the Michigan Consumer Protection Act, several state consumer fraud acts, breach of contract, several warranty theories, and common law fraud. (ECF No. 10). Plaintiff seeks injunctive and monetary relief. (*Id.*). Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 12). Plaintiff filed a response in opposition. (ECF No. 14). Defendant filed a reply. (ECF No. 15). Defendant also filed two notices of supplemental authority. (ECF Nos. 16, 17).[1] The Court will grant Defendant's motion to dismiss.

### I. Background

Plaintiff is a gamer. Defendant manufactures Legion T5 28IMB05 desktop computers (the "Product"), and Plaintiff purchased one. As taken from Plaintiff's amended

---

[1] One of the supplemental authorities provided was an order granting a motion to dismiss in *Lucero v. Lenovo (United States) Inc.*, No. SACV 23-0973 (C.D. Cal. 2024). That court summarily dismissed a complaint that mirrors the instant complaint.

1

complaint, Defendant markets its Product to ensure "solid performance to watch videos [and] play games." (ECF No. 10 at PID 58). Further, Defendant advertised that the Product can "handle complex applications simultaneously," "provides [] enough space to store all your documents and multimedia content," and that the graphics card "for gaming and graphic designing [] delivers the optimal visual experience." (*Id.*). Plaintiff interprets these advertisements to mean the Product will "not freeze or crash." (*Id.*). Plaintiff asserts that the Product frequently crashes or freezes in a severe manner, which interrupted Plaintiff's use of the Product. (*Id.* at PID 60).

Plaintiff includes in his amended complaint three anonymous online posts that all mention the Product's alleged freezing issue. (*Id.* at PID 58–60). Plaintiff alleges "hundreds of users" have the same problems with the Product. (*Id.* at PID 60). In Plaintiff's case, "he was forced to sell it part-by-part to get money for a new device." (*Id.*). Plaintiff submits that as a "result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1,999.00, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." (*Id.* at 61).

## II. Legal Standard

To survive a motion to dismiss under 12(b)(1), a plaintiff must show Article III standing. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, F. App'x 18, 22–23 (6th Cir. 2020). At this stage, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015). To establish standing, a plaintiff must show (1) an actual

2

or imminent injury in fact; (2) a causal connection between the injury and the defendant; and (3) that the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

An injury within the meaning of Article III must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury must be real and not abstract. *Id.* A future injury must be "certainly impending." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 401 (2013).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim was pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted). "The complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). To resolve a motion to dismiss, a court must accept as true all factual allegations, but it need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

### III. Analysis

Plaintiff brings several claims. Count 1: Michigan Consumer Protection Act; Count 2: Violation of State Consumer Fraud Acts; Count 3: Breach of Contract; Count 4: Breach of Express Warranty, Implied Warranty of Merchantability, and Magnuson-Moss Warranty Act; Count 5: Common Law Fraud.

A. Michigan Consumer Protection Act and Common Law Fraud

Defendant moved to dismiss these claims under 12(b)(6). First, Defendant argues that Plaintiff's common law fraud and Michigan Consumer Protection Act ("MCPA") must fail because he has not alleged how Defendant misstates or omitted any material facts about the Product. In response, Plaintiffs contends he met Rule 8's requirements by citing Defendant's advertisements and asserting that hardware and software defects prevented the Product from working as advertised.

As an initial matter, Plaintiff does not specify which section of the MCPA he brings his claim under. His amended complaint merely states, "Michigan Consumer Protection Act, § 445.901, *et seq.*" (ECF No. 10 at 64). Plaintiff's brief in response to Defendant's motion to dismiss says he "plausibly alleged deception." (ECF No. 14 at PID 104). The MCPA proscribes certain "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Affirmative misrepresentations, such as misrepresenting the quality or characteristics of a product, and material omissions, such as failing to reveal a material fact in such a way as to mislead or deceive a consumer, are included within the definition of "unfair, unconscionable, or deceptive" acts under the MCPA. *Id.* §§ 445.903(1)(d) & (s). The MCPA also proscribes

"[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. Laws § 445.903(1)(s).

Michigan courts permit consumers to bring MCPA claims premised on theories of fraud or breach of implied warranty. *See Mikos v. Chrysler Corp.*, 158 Mich. App. 781, 404 N.W.2d 783, 785 (Mich. Ct. App. 1987); *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2005 WL 3416466, at *11 (E.D. Mich. Dec. 15, 2005). Rule 9(b)'s heightened pleading requirements apply to MCPA allegations of fraudulent conduct but not allegations of breach of implied warranty. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011).

Turning to the common law fraud claim, the Michigan Supreme Court set out the elements of an actionable fraud claim in *Hi-Way Motor Co. v. Int'l Harvester Co.,* 247 N.W.2d 813, 816 (Mich. 1976):

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Id.* at 816 (citations and internal quotations omitted).

Plaintiff relies on Defendant's advertisements, but nowhere in those advertisements does Defendant promise that the Product would "not freeze or crash," "function reliably,"

5

or "run smoothly" as alleged in the amended complaint. Plaintiff's claims based on these assertions fail to state a claim.

Plaintiff also relies on Defendant's advertisement that the Product offers "solid performance" to sustain a claim for fraudulent misrepresentation. This marketing phrase is general and vague. Rule 9 requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the Court's judgment, use of the phrase "solid performance" is not sufficient to permit a claim; it is an unspecific and immeasurable term.

In essence, Plaintiff strung together some marketing language and now pleads fraud in a deficient manner. A court concluded the same when Plaintiff's counsel[2] brought a similar action in *Vivar v. Apple Inc.*, No. 22 Civ. 0347, 2022 WL 4227309, at *1 (S.D.N.Y. Sept. 12, 2022). There, a plaintiff brought a fraud claim and cited Apple's general advertisements. *Id.* at *5. The court explained that the complaint did not pass muster:

> The problem with Vivar's argument is that the Complaint does not contain any facts to substantiate that Apple ever made these representations. The Complaint includes advertisements from Apple stating that "each earbud has up to 9 hours of listening time, Powerbeats are "powered by the Apple H1 Chip", and the earbuds have "dual audio controls". However, Vivar does not include the allegedly deceptive advertisement upon which he bases this suit, nor does he provide any other facts to substantiate that Apple "conveyed in writing and promised [Powerbeats] would be defect-free" and made "representations affirm[ing] and promis[ing] that the Product . . . would maintain its charge equally and consistently."

---

[2] Much of Defendant's brief in support of its motion to dismiss is dedicated to attacking Plaintiff's counsel, Sheehan & Associates, P.C.

*Id.* at *6 (citations and quotations omitted). Much like in *Vivar*, Plaintiff's claims are premised on general marketing language, which Plaintiff then construed as deceptive guarantees. Plaintiff failed to state a claim under MCPA or common law fraud.

Plaintiff also claims Defendant made omissions in advertising the Product. (ECF No. 10 at PID 61–64). But Plaintiff does not identify what omissions Defendant supposedly made. Again, these assertions are too vague and conclusory to sustain a claim. Plaintiff's MCPA and common law fraud claims are dismissed for failure to state a claim.

Plaintiff also raises consumer fraud claims from Utah, West Virginia, Montana, Wyoming, Iowa, Nebraska, Mississippi, South Carolina, and Oklahoma. (ECF No. 10 at PID 63). Plaintiff seeks class certification for a Michigan class (under the MCPA) and class certification for a multi-state class under each individual state statute. (*Id.*). Because those statutes are similar to the MCPA, Plaintiff's multi-state claims fail for the same reasons his MCPA claim fails.

B.  Breach of Contract

Plaintiff alleges that he and Defendant entered into a contract and that the terms include the advertising language discussed above. Plaintiff argues that Defendant breached the contract when the "Product did not function reliably, did not run smoothly during operation subject to normal use, and did freeze and crash." (ECF No. 10 at PID 65). Defendant counters that it was never in privity with Plaintiff because Plaintiff purchased the computer from a third-party retailer.

To state a claim for breach of contract under Michigan law, a claimant must establish that "'(1) there was a contract; (2) which the other party breached; and (3) thereby resulting

in damages to the party claiming breach.'" *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)). "Privity of contract exists between contracting parties and intended beneficiaries." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 608 (E.D. Mich. 2017).

Plaintiff failed to state a proper breach of contract claim because Plaintiff and Defendant lack privity. Plaintiff's amended complaint makes clear that Plaintiff purchased the Product from a third-party retailer and not from Defendant. (ECF No. 10 at PID 62). There are no factual assertions in the amended complaint supporting the notion that Plaintiff and Defendant assented to the terms of a contract. Plaintiff and Defendant lack privity. *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 608 (E.D. Mich. 2017) ("Plaintiffs allege that they bought their ovens from third-party retailers, not directly from [defendant] . . . Therefore "[n]o privity of contract exists between [Plaintiffs], who [bought] from a retailer, and [defendant] who has not sold directly to the consumer."). Plaintiff "fails to construct a set of facts that would permit the inference that there were any affirmative promises to him that could be breached." *Calixte v. Walgreen Co.*, No. 22 C 1855, 2023 WL 2612595, at *4 (N.D. Ill. Mar. 23, 2023). *See also Bondick v. Ricoh Imaging Americas Corp.*, No. 21 C 6132, 2022 WL 2116664, at *6 (N.D. Ill. June 13, 2022). Plaintiff's breach of contract claim is dismissed.

C.  Express Warranty

Plaintiff alleges that Defendant breached an express warranty because Defendant "affirmed and promised that the Product would function reliably, not freeze or crash, and run smoothly during operation, subject to normal and intended use." (ECF No. 10 at PID

8

66). Plaintiff further alleges that these product affirmations became the basis of the bargain, and Defendant breached the express warranties. (*Id.*).

Under Michigan law, "privity of contract is necessary for a remote purchaser to enforce a manufacturer's express warranty." *Montgomery v. Kraft Foods Global, Inc.*, 822 F.3d 304, 308 (6th Cir. 2016) (quoting *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 n.12 (Mich. Ct. App. 2009)). As explained above, Plaintiff and Defendant lack privity because Plaintiff purchased the Product from a third-party retailer. Also, none of Defendant's marketing expressly promised that the Product would not freeze or crash and run smoothly during operation. Plaintiff's express warranty claim is dismissed.

D. Implied Warranty

Plaintiff's implied warranty claim fails for a lack of notice. Michigan law requires that buyers provide a manufacturer with pre-suit notice of a warranty claim. "MCL 440.2607(3)(a) provides: 'Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy [.]'" *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 229–30 (Mich. Ct. App. 2013). Plaintiff's amended complaint does not plead how he provided notice to Defendant. Plaintiff's brief maintains he provided notice "by filing this action on November 22, 2022." (ECF No. 14 at PID 112). Here, Plaintiff provided Defendant no notice that he believed Defendants was in breach prior to filing suit. Accordingly, Plaintiff is "barred from any remedy" under his implied warranty theory. Mich. Comp. Laws 400.2607(3)(a). Plaintiff's implied warranty claim is dismissed.

E. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act ("MMWA") provides a civil claim for relief for consumers who are damaged by a supplier or warrantor's failure to comply with its obligations under a written or implied warranty or under the MMWA in issuing such a warranty. 15 U.S.C. § 2310(d)(1). To state a claim under the MMWA, a plaintiff must demonstrate that (1) the item at issue was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given reasonable opportunity to cure any defects; and (4) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts. *Temple v. Fleetwood Enters., Inc.,* 133 F. App'x. 254, 268 (6th Cir. 2005). This claim fails for the same reasons as Plaintiff's express and implied warranty claims fail. *See Bondick,* 2022 WL 2116664, at *6 (dismissing a plaintiff's MMWA claim after dismissing both of Plaintiff's express and implied warranty claims).

F.  Injunctive Relief

Finally, because all of Plaintiff's claims fail, Plaintiff's claims for injunctive relief necessarily fail. A plaintiff must demonstrate "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (citing *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000)). Plaintiff's amended complaint merely states that he "intends to, seeks to, and will purchase the Product again when he can do so . . . ." (ECF No. 10 at PID 63). Plaintiff's vague assertion does not amount to Article III standing.

## IV. Conclusion

The Court will grant Defendant's motion to dismiss in full. Plaintiff failed to adequately plead his claims.

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss (ECF No. 12) is **GRANTED**.

**IT IS SO ORDERED.**

Date: March 27, 2024            /s/ Paul L. Maloney
                                Paul L. Maloney
                                United States District Judge